# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30010

CHERYL SLADE,

> Plaintiff - Appellee

v.

PROGRESSIVE SECURITY INSURANCE COMPANY,

> Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

May 9, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Louisiana

Before OWEN, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

The court has carefully considered this appeal in light of the briefs, oral argument, and pertinent portions of the record. Having done so, we REMAND the certification of the contract and Louisiana-insurance law class. We REVERSE the district court's certification of a fraud class. We elaborate on only three points.

I

Defendant-Appellant Progressive Security Insurance Company ("Progressive") contends that *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), requires reversal; it does not. In *Comcast*, plaintiffs brought antitrust claims asserting four separate liability theories. *Id.* at 1430–31. The district court

No. 15-30010

rejected all but one. *Id.* at 1431. Nonetheless, the district court certified a class action after finding that damages could be calculated on a class-wide basis. *Id.* at 1431. The district court based its certification decision on plaintiffs' damages model, which calculated damages based on all four liability theories and did not isolate damages from any one theory. *Id.* The Supreme Court reversed. *Id.* at 1432. It reasoned that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class . . . ." *Id.* at 1433. Accordingly, *Comcast* held that when plaintiffs argue that damages can be decided on a class-wide basis, plaintiffs must put forward a damages methodology that maps onto plaintiffs' liability theory. *Id.* at 1433.

Our cases interpreting *Comcast* confirm that what *Comcast* demands is fit between plaintiffs' class-wide liability theory and plaintiffs' class-wide damages theory. *See, e.g.*, *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 683 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1824 (2016); *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir.), *cert. denied sub nom. BP Expl. & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S. Ct. 754 (2014). For example, in *Deepwater Horizon*, we noted that "[t]he principal holding of *Comcast* was that a model purporting to serve as evidence of damages must measure only those damages attributable to the theory of liability on which the class action is premised." *Deepwater Horizon*, 739 F.3d at 817 (internal quotation marks, citation, and alterations removed).

Here, Plaintiffs' liability theory is that Defendant unlawfully used WorkCenter Total Loss (WCTL) to calculate the base value of total loss vehicles. Plaintiffs claim that using WCTL, instead of lawful sources such as the National Automobile Dealers Association (NADA) Guidebook or the Kelly

2

No. 15-30010

Blue Book (KBB), resulted in their vehicles being assigned a lower base value and accordingly resulted in Plaintiffs receiving lower payouts on their insurance claims.

Plaintiffs' damages theory aligns with that liability theory. Plaintiffs contend that damages can be calculated by replacing Defendant's allegedly unlawful WCTL base value with a lawful base value, derived from either NADA or KBB, and then adjusting that new base value using Defendant's current system for condition adjustment. Plaintiffs contend that such a calculation can be done on a class-wide basis because Defendant already possesses NADA scores for most of the class, NADA or KBB scores are otherwise publicly available, and Defendant already has condition scores for each vehicle. In fact, Plaintiffs' damages expert opined that she could apply Defendant's condition adjustment to Defendant's NADA scores or publicly available NADA or KBB data. This damages methodology fits with Plaintiffs' liability scheme because it isolates the effect of the allegedly unlawful base value. That is, by essentially rerunning Defendant's calculation of actual cash value but with a lawful base value, Plaintiffs' damages theory only pays damages resulting from the allegedly unlawful base value.

And Plaintiffs' damages methodology is sound. Defendant calculates the base value and the condition adjustment separately. Under either the WCTL system or a NADA or KBB system, base value purports to measure the retail cost of a vehicle of the same make, model, and year of the loss vehicle. From this base value, an adjustment can be made to consider the condition of the loss vehicle. Because this condition adjustment is a separate and unrelated step from the calculation of base value, there is no principled reason why Defendant's own condition adjustment scores could not be used to adjust base values derived from NADA or KBB. Indeed, Plaintiffs' damages expert

testified that it would not be difficult to apply Defendant's condition adjustment to NADA base values.

The court finds, for essentially the reasons stated by the district court, that Plaintiffs' damages methodology does not preclude class treatment.

II

Defendant argues—for the first time on appeal—that by accepting Defendant's condition score calculation as is, Plaintiffs may have impermissibly waived unnamed class members' ability to assert a future claim contesting Defendant's computation of the condition factor.[1]  Because this argument was not expressly raised to the district court, and may present important certification questions, we remand.

At the outset, it is important to position Defendant's argument into the broader class certification framework.  If Plaintiffs had raised challenges to both the condition adjustment and the base value calculation, Plaintiffs' class certification motion may have run into predominance problems because condition adjustments appear to be highly individualized.  Perhaps recognizing this concern, Plaintiffs disclaimed any challenge to the condition adjustment. This waiver may have resolved the predominance problem[2]—all parties agree

---

[1] Defendant's failure to raise this specific adequacy argument before the district court is understandable.  Before the district court, Plaintiffs never explicitly agreed to waive claims related to the condition adjustment.  Instead, the district court gleaned that Plaintiffs had "no quarrel" with the condition adjustment from the parties' presentation of the issues raised by the class.  Plaintiffs did not explicitly disclaim challenges to the condition adjustment until they arrived at this court.

[2] The predominance problem may re-emerge, or may morph into a superiority problem, if too many unnamed plaintiffs wish to bring individual condition adjustment claims.  *See* Lee Anderson, *Preserving Adequacy of Representation When Dropping Claims in Class Actions*, 74 UMKC L. Rev. 105, 124 (2005) ("[C]lass representatives may elect to drop claims to improve the likelihood of meeting Rule 23(b)(3)'s 'predominance' requirement. However, the related 23(b)(3) requirement that the class suit prove 'superior to other available methods for the fair and efficient adjudication of the controversy' may wind up undermined if too many individual suits appear likely to follow.").  On remand, the district

that the base value calculation is formulaic and non-individualized. But resolving the predominance problem with a waiver of claims raises a separate potential bar to class certification—adequacy.

Adequacy encompasses three separate but related inquiries (1) "the zeal and competence of the representative[s'] counsel"; (2) "the willinginess and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) the risk of "conflicts of interest between the named plaintiffs and the class they seek to represent." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005) (quoting *Berger v. Compaq Comp.Corp.*, 279 F.3d 313, 313–14 (5th Cir. 2002)). When the class representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class. *See, e.g.*, *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830–31 (7th Cir. 2011) ("A representative can't throw away what could be a major component of the class's recovery."). And for this reason, Defendant expressly couches its waiver argument not as an attack on predominance but as an attack on a purported conflict of interest.

Of course, not all purported conflicts between a class representative and members of the class will defeat adequacy. *O'Connor v. Uber Techs., Inc.*, 311 F.R.D. 547, 566 (N.D. Cal. 2015) ("[A] decision to abandon a claim that may not be certifiable does not automatically render a plaintiff inadequate, particularly when they seek the majority of the claims."); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 307 (N.D. Ohio 2009) ("[C]ourts have found that concerns related to the potential res judicata effect of abandoning a certain claim in favor of another claim do not necessarily create a conflict between the class

---

court will be better equipped to address this concern, either initially or following the notice and opt-out period.

5

No. 15-30010

representative and the absent class members."). Instead, deciding whether a class representative's decision to forego certain claims defeats adequacy requires an inquiry into, at least: (1) the risk that unnamed class members will forfeit their right to pursue the waived claim in future litigation, (2) the value of the waived claim, and (3) the strategic value of the waiver, which can include the value of proceeding as a class (if the waiver is key to certification). *See, e.g.*, *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (Easterbrook, J.) (weighing the value of the purportedly waived claim against the value of proceeding as a class on the un-waived claims); *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2016 WL 5746364, at *5 (N.D. Cal. Sept. 30, 2016) ("A strategic decision to pursue those claims a plaintiff believes to be most viable does not render her inadequate as a class representative."); *O'Connor*, 311 F.R.D. at 566 (finding no adequacy problems where the Plaintiffs provided evidence that the waived claims were low value and may have been difficult to prove on a class-wide basis); *Bowe v. Pub. Storage*, 318 F.R.D. 160, 175 (S.D. Fla. 2015) ("[C]ourts have found proposed representatives inadequate where they had strategically abandoned or did not have standing to bring substantial and meaningful claims that many absent class members could potentially bring and prevail upon."); *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 84 (M.D. Tenn. 2004) (finding no adequacy problems where the risk of future preclusion was low). A class representative's decision to waive unnamed class members' claims will defeat adequacy where the lost value of the waived claims (percent risk of future preclusion multiplied by the value of the waived claim) is greater than the strategic value of the decision to waive. *See, e.g.*, *Murray*, 434 F.3d at 953; *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 670 (D. Kan. 2004) ("While the court can certainly appreciate the fact that a named plaintiff's failure to assert certain claims of the absent class members might

give rise to a conflict of interest when the named plaintiff is advancing his or her own interests at the expense of the class, the mere fact that a named plaintiff elects not to pursue one particular claim does not necessarily create such a conflict.  Here, the named plaintiffs' decision to abandon the fraud claim appears to have been a choice that advances the named plaintiffs' interests as well as the interests of the absent class members, and therefore the court is unpersuaded that any impermissible conflict of interest exists.").

The risk of preclusion here is uncertain.  Part of this risk is inherent whenever a party waives claims to secure class certification because "[a] court conducting an action cannot predetermine the res judicata effect of the judgment; that effect can be tested only in a subsequent action."  *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 396 (1996) (Ginsburg, J., concurring in part and dissenting in part) (citing 7B C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1789, p. 245 (2d ed. 1986)).  Moreover, courts have inconsistently applied claim preclusion to class actions.  *See, e.g., In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 578 (E.D. Tenn. 2014) (noting "considerable disagreement among courts on this issue").  On one hand, class actions are "one of the recognized exceptions to the rule against claim-splitting."  *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 431–32 (4th Cir. 2003); *accord Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012) (same); *Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963, 974 (E.D. Tex. 2015) (noting that "other courts recognize an exception to the rule against claim splitting for class actions").  At the same time, courts have also refused to certify class actions because of perceived risk of down the line preclusion.  *See, e.g., McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 283 (5th Cir. 2008) (noting that "if the price of a Rule 23(b)(2) disparate treatment class both limits individual opt outs and sacrifices class members' rights to avail themselves of significant legal remedies, it is too high a price to impose"); *Fosmire v.*

No. 15-30010

*Progressive Max Ins. Co.*, 277 F.R.D. 625, 634 (W.D. Wash. 2011) (finding that "[plaintiff's] attempt to split her putative class members' claim by excluding stigma damages creates a conflict between her interests and the interests of the putative class"); *Sanchez v. Wal Mart Stores*, No. 06-CV-02573 (JAM) (KJM), 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (finding that a class representative was inadequate because her decision to forego personal injury damages could harm the class).

We note that the risk to unnamed class members is smaller than usual here because of the opportunity for opt outs. Plaintiffs sought certification under Rule 23(b)(3), which allows opting out. *See* Fed. R. Civ. P. 23(b)(3) (allowing opt outs from a Rule 23(b)(3) class). Thus, if unnamed class members thought that the risk of preclusion were cogent and wished to protect their claim, they could do so. *See* 7AA Charles Alan Wright et al., Fed. Prac. & Proc. § 1777 (3d ed. 2005) ("The notice requirement and the option to exclude oneself from the judgment recognize the special character of Rule 23(b)(3) classes."). And if the number of plaintiffs opting out demonstrated a cogent conflict, the district court could decertify the class. Therefore, here, to the extent there is any risk of preclusion, the class can protect itself. *See Murray*, 434 F.3d at 953 ("Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification. When a few class members' injuries prove to be substantial, they may opt out and litigate independently."); Edward F. Sherman, *"Abandoned Claims" in Class Actions: Implications for Preclusion and Adequacy of Counsel*, 79 Geo. Wash. L. Rev. 483 (2011) ("But if abandoned claims are made an issue as to adequacy of representation for purposes of class certification, and the court determines that there is a genuine risk of preclusion, then there are strong reasons for it to

order notice and a right to opt out.  This would give class members who value those claims the opportunity to opt out and pursue them individually.").[3]

Once again, because this precise argument was not raised below, the district court never had an opportunity to weigh the value of the potentially waived claim against the strategic value of the waiver (here the value of proceeding as a class on the base-value claim).  *See Murray*, 434 F.3d at 953 ("The district court's second reason—that Murray should have sought compensatory damages for herself and all class members rather than relying on the statutory-damages remedy—would make consumer class actions impossible. . . . Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment.  Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification. . . . Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether.").  We do not attempt this weighing in the first instance.

Instead, on remand, the district court can consider the risk of preclusion, the value of the potentially waived claims, and the relative strategic value of Plaintiffs' proffered waiver.  In doing so, we note that the district court has a number of options at its disposal, each of which may or may not be appropriate depending on how the case develops, including, but not limited to:

- Concluding the risks of preclusion are too great and declining to certify the class;

---

[3] The opt-out procedure is not a panacea.  If the risk of future preclusion of a valuable claim is disproportionately high, a class representative may be inadequate even assuming opt-out protections.

- Certifying the class as is and then tailoring the notice and opt-out procedure to alert the class of the risk of preclusion;
- Concluding that the benefits of proceeding as a class outweigh the risks of future preclusion and certifying the class as is; or
- Defining the class in a way to exclude unnamed plaintiffs who may quarrel with the condition adjustment.

## III

We reverse the district court's order certifying the fraud class. This court has held consistently that "a fraud class action cannot be certified when individual reliance will be an issue." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996); *see also Cole v. Gen. Motors Corp.*, 484 F.3d 717, 727 (5th Cir. 2007) ("'[T]he economies ordinarily associated with the class action device' are defeated where plaintiffs are required to bring forth individual proof of reliance." (quoting *Patterson v. Mobil Oil Co.*, 241 F.3d 417, 419 (5th Cir. 2001))); *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 211 (5th Cir. 2003) ("Fraud actions that require proof of individual reliance cannot be certified as Fed.R.Civ.P. 23(b)(3) class actions because individual, rather than common, issues will predominate."). True, there are some cases where a plaintiff's reliance theory is capable of class-wide resolution. *See In re Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119–20 (2d Cir. 2013). But, this is not one of them. Slade's surviving fraud claim is a common-law fraud claim, which under Louisiana law requires proof of reliance. *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 624 (5th Cir. 1993) ("To prevail [on a fraud claim], Louisiana requires proof of actual reliance."). Importantly, showing reliance here will necessitate individual inquiries because Defendant's loss-payout process allowed claimants to individually negotiate their claims. Because Slade has failed to show that class issues will predominate, Slade's common-law fraud claim should not have been certified.

\* \* \*

No. 15-30010

We REMAND the certification order as to the contract and statutory claims and REVERSE the certification order as to the fraud claim.