# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2021

Lyle W. Cayce
Clerk

No. 20-20567

Randy Randel; Debra Randel,

*Plaintiffs—Appellants*,

*versus*

Travelers Lloyds of Texas Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-2883

Before Jones, Southwick, and Costa, *Circuit Judges*.
Gregg Costa, *Circuit Judge*:

After a fire at their home, Randy and Debra Randel filed a claim on their homeowner's insurance policy with Travelers Lloyds of Texas. Although Travelers made some early payments, the Randels asserted that much more was owed. The parties agreed to an appraisal. The appraisal award came in closer to the Randels' view of the damages. Travelers paid the additional amount.

Payment of the appraisal award leaves two principal questions for this appeal. First, does the payment of the appraisal award prevent a plaintiff

No. 20-20567

from continuing to pursue a breach of contract claim against an insurer? Second, can an insurer be liable under the Texas Prompt Payment of Claims Act for failing to timely pay the full damages it owed even though it timely made sizeable payments in response to the claim? We answer both questions yes. Payment and acceptance of an appraisal award means there is nothing left for a breach of contract claim seeking those same damages. But a plaintiff may still have a claim under the prompt payment law after it accepts an appraisal award. The Supreme Court of Texas recently held that even a preappraisal payment that seemed reasonable at the time does not bar a prompt-payment claim if it does not "roughly correspond" to the amount ultimately owed. *See Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658 (Tex. 2021).

## I.

A Fourth of July fire in the Randels' garage caused damage to their home. They notified their home insurer, Travelers, the following day. The homeowner's policy provided coverage for damage to the dwelling, other structures, personal property, and loss of use (or additional living expense) caused by "Fire and Lightning" and "Sudden and Accidental Damage from Smoke."

Travelers responded the same day, acknowledging receipt of the claim, issuing the Randels a $10,000 advance for damage to their personal property, and inspecting the property with the Randels and their restoration contractor. The Randels authorized their contractors to secure and repair the property, but a few weeks later, after a disagreement about how to undertake certain repairs, the Randels told the contractor to stop all repair work.

In August, Travelers provided its estimate of the damage to the dwelling: $179,232.16. After subtracting the deductible and depreciation

costs, Travelers paid the Randels $126,720.86. In October, Travelers completed its personal property estimate of $53,270.49. Over the next several months, Travelers also made three loss-of-use payments totaling $24,446.33.

The Randels' public adjuster provided a much higher estimate of damage to the dwelling: $499,448.69. Around this time, Travelers also reinspected the property to complete the personal property claim. According to Travelers, the reinspection revealed that after the Randels fired the contractors, repairs ceased, and thus any additional damage resulted from the Randels' failure to mitigate. Travelers thus declined coverage for additional damage to the property.

To try and resolve the disagreement over the damage to the dwelling, the Randels invoked the policy's appraisal provision. Travelers initially argued that appraisal was inappropriate, so the Randels filed a petition in Texas state court to compel appraisal. Travelers answered that there was no justiciable controversy because it had since agreed to participate in an appraisal. That answer nonetheless maintained that appraisal was not appropriate because the dispute was about *coverage* under the policy rather than the *amount* of damages.

The parties submitted for appraisal the dwelling and personal property claims but excluded the loss-of-use claim. An appraisal award granted $317,030.70 actual cash value in dwelling damages and $100,331.02 actual cash value in personal property damage.

Travelers paid the award within five business days. Once it deducted prior payments and the policy deductible, the total postappraisal payout was $164,435.23 for the dwelling and $21,098.22 for personal property. Finally, Travelers issued its fourth and final payment on the Randels' loss-of-use

claim, bringing the total loss-of-use payout to $46,657.22. All told, Travelers paid the Randels $533,529.88.

Full payment of the appraisal award did not end the parties' dispute. Several weeks before the appraisal award issued, the Randels had sued Travelers in state court. They alleged that Travelers underpaid their claims in violation of the insurance policy, acted in bad faith,[1] and violated the Texas Prompt Payment of Claims Act (the Act). The Randels continued to press these claims after Travelers paid the appraisal amount.

After removing the case to federal court, Travelers successfully moved for summary judgment on all claims. The court concluded that the Randels' acceptance of the appraisal payment ended their breach of contract claim for damages to the dwelling and determined that the Randels were not entitled to additional benefits for loss of use. Without a breach of contract claim, Randel could not maintain a claim for bad faith. As for the prompt-payment claims, the court held that Travelers complied with the Act's deadlines for the loss-of-use claim and that Travelers dodged liability on the property-damage claims by making reasonable preappraisal payments.

## II.

We begin with the breach of contract claim for damages to the dwelling. The Randels argue that their receipt of the appraisal payment does not bar their breach of contract claim for damage to the dwelling. This is so, they contend, because Travelers waived an estoppel argument by contesting liability early in the litigation. But much of the caselaw the Randels rely on

---

[1] It does not appear that the Randels are seeking to revive their bad faith claim on appeal. In any event, it rises or falls with the breach of contract claim. *See, e.g.*, *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). Our affirming the dismissal of the contract claim thus also supports the dismissal of the bad faith claim.

addresses a different issue: whether an insurer may, through its defenses and litigation conduct, waive its ability to invoke the appraisal process. *See, e.g.*, *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407–08 (Tex. 2011). That ship has sailed here; the parties agreed to an appraisal and an award issued.

It is also the case that the mere issuance of an appraisal award does not bar a breach of contract claim. Appraisal only sets the amount of damages, so an insurer can still defend a breach of contract claim on liability grounds after an award issues. *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 822 n.12 (Tex. 2019) (recognizing that postappraisal, an insurer may "refuse to pay the appraisal amount and maintain its denial of liability").[2] When the insurer continues to maintain a coverage defense, the appraisal award becomes binding only if the court ultimately finds coverage. In that situation, the insurer wants to continue litigating the breach claim as a successful coverage defense to avoid payment of the award.

Although the issuance of an appraisal award does not bar a breach of contract claim, payment and acceptance of the award does. *See id.* (recognizing that in paying an appraisal award, an insured is "essentially admitting it was incorrect to deny liability initially"). That is what happened here. The following rule thus applies: "[T]he insurer's payment of the award bars the insured's breach of contract claim premised on a failure to pay the amount of the covered loss." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 129

---

[2] Refusing to pay the award or paying it as an admission of liability are not an insurer's only options when faced with an appraisal award. A third option is to pay the award while still reserving the right to contest liability. *Barbara Techs.*, 589 S.W.3d at 822 n.12. In that situation, payment of the award prevents further interest from accruing on a prompt-payment claim in the event the insured is later found liable. Travelers does not pursue that option. It is not continuing to contest liability in an effort to obtain a refund of its appraisal payment.

(Tex. 2019); *see also Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F. App'x 366, 368 (5th Cir. 2012) ("Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].'" (quoting *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2004, no pet.))). This rule applies even when the appraisal award values the covered loss in an amount greater than the insurer had initially assessed and even when the insurer initially denies the insured's claim. *Ortiz*, 589 S.W.3d at 132–33. Acceptance of the appraisal payment thus bars the Randels' breach claim seeking payment for the dwelling damage the appraisal award covered.

Despite the Randels' insistence that Travelers' preappraisal "no coverage" position somehow means the breach claim is still alive, they do not cite a single case allowing a breach claim to continue after payment and acceptance of an appraisal award. That is for good reason. Even putting aside labels like estoppel and waiver, there is nothing left to litigate once a plaintiff has received full damages on a claim. Damages are an element of a breach-of-contract claim. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). As the Randels have received every dollar they are owed for dwelling coverage, there is nothing left to litigate on this claim.

The loss-of-use claim was not submitted to appraisal. But there is no evidence that Travelers failed to pay any amounts due. Travelers made four loss-of-use payments totaling $46,657.22. The Randels fail to explain why the amount paid was insufficient.

We affirm the dismissal of the contract claims.

III.

An insured's payment of an appraisal award may defeat a contract claim, but it does not automatically prevent a prompt-payment claim. *Barbara Techs.*, 589 S.W.3d at 822. That is because an insurer may be liable under the Texas Prompt Payment of Claims Act even when it pays in full if that payment was not timely. *Id.* The statute provides that the insurer, upon receiving all requested information necessary to evaluate the claim, must pay the claim within 60 days. Tex. Ins. Code § 542.058(a). If the full payment occurs after that deadline, the insurer is responsible for 18 percent interest through the date of payment and attorney's fees. *Id.* at § 542.060(a).

The district court dismissed the prompt-payment claim relating to dwelling and personal property coverage because although Travelers' early payments were less than the amount it ultimately owed, the early payments were in an amount it deemed reasonable. That ruling is understandable given the state of the law when the district court ruled. A few years ago, we made an *Erie* guess that the Supreme Court of Texas would not impose prompt-payment liability so long as a timely preappraisal payment of the claim was for a "reasonable" amount. *Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 259 (5th Cir. 2017). Determining whether the *Mainali* preappraisal payment was reasonable was easy—that insurer paid more preappraisal than it ultimately owed. *Id.* But like the district court here, courts applying *Mainali* found preappraisal payments to be reasonable even when the amounts were significantly less than what was ultimately owed. *See, e.g.*, *Gonzalez v. Allstate Vehicle and Prop. Ins. Co.*, 474 F.Supp.3d 869, 876 (S.D. Tex. 2020) (finding reasonable an insurer's preappraisal payment 8.12 times smaller than the appraisal award); *Crenshaw v. State Farm Lloyds*, 425 F. Supp. 3d 729, 740 (N.D. Tex. 2019) (finding reasonable an insurer's preappraisal payment 3.64 times smaller than appraisal award).

No. 20-20567

While this case was on appeal, the Supreme Court of Texas provided the answer we could only guess at four years ago. It held that that "a reasonable payment should roughly correspond to the amount owed on the claim." *Hinojos*, 619 S.W.3d at 658. Because the insurer in *Hinojos* paid "significantly less within the statutory deadline than the amount the appraisers ultimately determined that it owed on the claim"—the difference being $23,000, *id.* at 654—its payment was not timely. *Id.* at 657 n.34. Although the result in *Mainali* still stands given that it involved an overpayment, the reasonableness standard it applied turned out to be too broad. We now know that to avoid prompt-payment liability, a preappraisal payment must "roughly correspond" to the amount ultimately owed. *Id.* at 658.

Today we need not decide just how close a preappraisal payment needs to be to "roughly correspond" with the final amount owed. There is a substantial gap of roughly $185,000 between the preappraisal dwelling and personal property payments and the appraisal award. That difference is much greater than the *Hinojos* underpayment. Indeed, Travelers now concedes that its preappraisal payment was not reasonable given the recent guidance from the state high court. Travelers' preappraisal payment thus is not a defense to liability under the Texas Prompt Payment of Claims Act. As a result of this recent clarification of Texas law, the claim seeking interest for late payment of dwelling coverage must be remanded.[3]

---

[3] While now conceding that its preappraisal payment was not reasonable, Travelers argues that an alternative ground for affirming exists: that the Randels never responded to its reasonable requests for additional information, so the payment clock never started ticking. TEX. INS. CODE § 542.055(b). But having scoured the summary judgment briefing in the trial court, including the record citation defense counsel provided at oral argument, we do not see where Travelers raised this ground for summary judgment. The district court's order did address Travelers' requests for additional information but only as it pertained to the Randels' loss-of-use benefits. As this argument was not raised as a basis

No. 20-20567

The result is different, however, for the Randels' prompt-payment claim for the loss-of-use benefits. We agree with the district court, for the reasons it stated, that Travelers made timely payments of the full amount of those benefits.

\* \* \*

The judgment of the district court is AFFIRMED IN PART and REVERSED IN PART. The prompt-payment claim relating to dwelling and personal property coverage is REMANDED.

---

for summary judgment in the district court, which deprived the Randels of an opportunity to respond, we will not consider it as an alternative ground for affirming. We leave it for the district court to decide on remand whether Travelers may press this issue as a summary judgment ground on the remaining prompt-payment claim.