# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2023

Lyle W. Cayce
Clerk

No. 22-20093

Philip Angell; Steven Brown; Tonnie Beck; Tammy Morris; Dawn Burnham,

*Plaintiffs—Appellees*,

*versus*

GEICO Advantage Insurance Company; Geico Indemnity Company; Government Employees Insurance Company; GEICO County Mutual Insurance Company; GEICO Choice Insurance Company,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-799

Before Richman, *Chief Judge*, and King and Higginson, *Circuit Judges*.

King, *Circuit Judge*:

Plaintiffs seek to represent a class of insureds claiming that GEICO failed to fully compensate them for the total loss of their vehicles under their respective insurance policies. The district court held that Plaintiffs had standing to sue on behalf of the proposed class and subsequently granted class certification. GEICO now appeals both holdings. We AFFIRM.

No. 22-20093

## I.

This appeal arises out of a class-action lawsuit filed by Plaintiffs-Appellees Philip Angell, Steven Brown, Tonnie Beck, Tammy Morris, and Dawn Burnham (the "Plaintiffs") against Defendants-Appellants GEICO Advantage Insurance Company, GEICO Indemnity Company, Government Employees Insurance Company, GEICO County Mutual Insurance Company, and GEICO Choice Insurance Company (collectively, "GEICO"). Each Plaintiff possessed a vehicle that was subject to a private passenger auto insurance policy with a different Defendant-Appellant (collectively, the "Policies"). Each Plaintiff's vehicle was involved in an auto collision while insured under one of the Policies.

The contractual language at issue in this case is identical across all of the Policies. The Policies provide collision and comprehensive coverage for a "loss" sustained by a covered vehicle. The Policies define a "loss" as a "direct and accidental loss of or damage to: a. The auto, including its equipment; or b. Other insured property." The Policies limit GEICO's liability for a "loss" to the lesser of the: "a. *Actual cash value* of the stolen or damaged property; b. Amount necessary to repair or replace the property with other of like kind and quality; or c. Amount stated in the Declarations of this policy." "Actual cash value" ("ACV") is defined as "the replacement cost of the auto or property less *depreciation* and/or *betterment*."[1]

In March 2020, Plaintiffs filed their initial complaint, which they amended twice. In their second amended complaint (the "Complaint"), Plaintiffs allege that the Policies require GEICO to remit the ACV for a

---

[1] "Depreciation" is defined as "a decrease or loss in value or condition to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes." "Betterment" is defined as "improvement of the auto or property to a value or condition greater than its pre-loss condition."

covered vehicle involved in a covered loss if the amount necessary "to repair the vehicle (plus any salvage value) exceeds the value of the vehicle prior to the loss," that is, if there is a complete or "total" loss of the vehicle. The Complaint further alleges that under Texas law, ACV includes a covered vehicle's sales tax, title fees, and registration fees (collectively, the "Purchasing Fees"). It also alleges that Plaintiffs—who were all entitled to ACV payments under the Policies following their respective collisions—did not receive ACV payments that included the entirety of their Purchasing Fees. No Plaintiff claims that he or she has been denied payment of all three Purchasing Fees.

The Complaint contains six causes of action. The first five counts, each brought by a specific named Plaintiff against his or her respective insurance company and on behalf of a proposed class of similarly situated individuals, allege that GEICO breached the Policies by failing to pay the entirety of their corresponding Plaintiff's Purchasing Fees. Of the five named Plaintiffs, not one claims that he or she was denied payment of all three of the individual fees that collectively comprise the Purchasing Fees. Specifically, Angell, Beck, Morris, and Burnham (all of whom owned their vehicles), allege that they are owed registration fees (having received payments for their sales tax and title fees), while Brown (who leased his vehicle), alleges that he is owed both his registration fees and sales tax. No named Plaintiff alleges that he or she is owed his or her title fees. The sixth count, brought by all Plaintiffs against GEICO on behalf of the entire proposed class, alleges a violation of the Texas Prompt Payment of Claims Act (the "TPPCA").

In July 2021, Plaintiffs moved for class certification, seeking to represent a class defined as: "All individuals insured under a Texas auto physical damage policy issued by GEICO who (1) made a first-party property damage claim from March 5, 2016 through the date on which the Class is certified, (2) where such claim was determined to be and adjusted as a total

loss," pursuant to Federal Rule of Civil Procedure 23(b)(3). The district court issued an order granting class certification in November 2021. In its order, the court first addressed GEICO's argument that Plaintiffs lacked standing to represent their proposed class, determining that each Plaintiff met Article III's standing requirement because he or she alleged an "underpayment of ACV . . . traceable to GEICO'[s] alleged breach of contract." The court then turned to the issue of class certification, ruling that Plaintiffs could adequately represent their proposed class and that the proposed class satisfied Rule 23(b)(3)'s predominance requirement. The court also certified the class with respect to Plaintiffs' TPPCA claim, stating that there was no reason to distinguish between that claim and the other claims for breach of the Policies because "[n]othing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the terms of the policy but delayed payment beyond the applicable statutory deadline."

After granting Plaintiffs' motion for class certification, the court later clarified that the proposed class definition be modified so that it extended "only to covered total-loss claims and claims submitted under collision and/or comprehensive coverage." Therefore, the amended class includes:

> All individuals insured under a Texas auto physical damage policy issued by GEICO who (1) made a first-party property damage claim under collision and/or comprehensive coverage determined by GEICO to be a covered total-loss claim from March 5, 2016 through the date on which the Class is certified, (2) where such claim was determined to be and adjusted as a total loss.

*Compare* ROA.672, *with* ROA.1570.

GEICO subsequently appealed the district court's order certifying the class.

No. 22-20093

## II.

GEICO challenges both Plaintiffs' standing as class representatives and the district court's certification of the class pursuant to Federal Rule of Civil Procedure 23. We begin by addressing Plaintiffs' standing because resolving that issue "is an inherent prerequisite to the class certification inquiry." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[S]tanding . . . is the threshold question in every federal case . . . ."). To demonstrate standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The parties disagree as to whether GEICO's standing argument is more appropriately characterized as one regarding class certification. GEICO concedes that each Plaintiff has standing to bring a claim on his or her own but that the nature of each Plaintiff's injury does not extend to the scope of the injury alleged under the class's definition, making Plaintiffs unsuitable class representatives. This is because, although Plaintiffs seek to represent a class of individuals who are owed *all* Purchasing Fees, no named Plaintiff alleges that he or she is owed title fees, and only one alleges that he is owed sales tax. Plaintiffs counter GEICO's standing argument by asserting that they each must merely demonstrate that they individually have standing to bring their claims, and whether their individual claims sufficiently align with those of the class is a matter for class certification.

There has yet to be a bright line drawn between the issues of standing and class certification. *See Gratz v. Bollinger*, 539 U.S. 244, 263 n.15 (2003)

(noting "tension in our prior cases in this regard").[2] We have likewise never ruled on the appropriate means by which to evaluate whether a plaintiff has standing to represent a class. Sister circuits that have addressed this issue have typically taken one of two approaches: the more intensive "standing approach" or the more forgiving "class certification approach." *See* 1 WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 2:6 (6th ed. 2022). A court utilizing the class certification approach only assesses a named plaintiff's individual standing; if that is satisfied, any remaining analysis is considered a matter of class certification under Rule 23. *Id.*; *see Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in [Rule 23].");  *Melendres v. Arpaio*, 784 F.3d 1254, 1261–63 (9th Cir. 2015) (adopting the same approach); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279–80 (11th Cir. 2000) ("[P]rior to the certification of a class, . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim. . . . 'Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.'" (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)))

In contrast, courts that employ the standing approach compare the injuries or interests of the named plaintiff with those of the putative class and

---

[2] Although acknowledging this uncertainty in *Gratz*, the Supreme Court declined to take up the issue, holding that regardless of whether the issue was best framed in terms of adequacy or standing, the plaintiffs satisfied the requirement. 539 U.S. at 263.

will hold that the named plaintiff lacks standing for the class claims if his or her harms are not sufficiently analogous to those suffered by the rest of the class. *See* RUBENSTEIN, *supra*; *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) ("So the question of standing is not: Are there differences between the claims of the class members and those of the class representative? Rather, the pertinent question is: Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?"); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) ("[A] plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' . . . and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants . . . ." (first quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)); and then quoting *Gratz*, 539 U.S. at 267)); *see also Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 131–33 (3d Cir. 2022) (holding that named plaintiffs who had invested in different funds than the class had standing where all of the funds were part of same "suite" of products, in which investing was "allegedly imprudent due to the same decisions or courses of conduct" of the defendants).[3]

---

[3] While we have previously affirmed the usage of the class certification approach, *Cooper v. Univ. of Tex. at Dall.*, 482 F. Supp. 187, 190–91 (N.D. Tex. 1979) ("[A]s the relationship between a class representative and the class members becomes increasingly drawn out, Article III concerns start to rise. Even if this is so, this concern . . . is only a prudential limitation of Article III because the class representative at the least alleges an injury in fact. At the same time, Rule 23 . . . must be viewed against the nature and purpose of the substantive law underlying the claims at issue. In an employment discrimination case, the court must apply Rule 23 in such a way as to fulfill Congress' purposes in enacting Title VII of the Civil Rights Act of 1974 [*sic*]."), *aff'd*, 648 F.2d 1039 (5th Cir. Unit A June 1981) (per curiam), we did so before the Supreme Court decided the trio of cases most often used

No. 22-20093

Because Plaintiffs have demonstrated that they have standing under either approach, we need not decide which of the two controls in this circuit. It is clear that each Plaintiff individually satisfies the less stringent class certification approach. Indeed, there is no dispute that each Plaintiff alleges that he or she has suffered *some* injury; the disagreement between the parties concerns how those injuries relate to those of the class.

Plaintiffs also meet the more intensive standing approach. We evaluate standing "on a claim-by-claim basis." *James v. City of Dall.*, 254 F.3d 551, 563 (5th Cir. 2001). Counts I through V of the Complaint contain vastly similar claims. In each of these counts, the Complaint alleges that each Plaintiff is entitled to Purchasing Fees from his or her corresponding defendant insurer. No Plaintiff, though, alleges that he or she was deprived of all three Purchasing Fees. GEICO argues that Plaintiffs allege three separate injuries: a deprivation of sales tax, of title fees, and of registration fees. GEICO emptily asserts that its liability for each Purchasing Fee will need to be "separately analyzed because the business practice associated with whether that [Purchasing Fee] was paid and whether that [Purchasing Fee] is covered is different." GEICO contends that its liability for taxes versus fees is fundamentally different, pointing to Plaintiffs' use of different experts to prove GEICO's liability for each.

We disagree with the contention that Plaintiffs have alleged three separate injuries. GEICO's failure to remit any of the three Purchasing Fees amounts to the same harm—a breach of the Policies. Whether GEICO is liable to Plaintiffs for any of the Purchasing Fees is dependent on an interpretation on the same language in the Policies and how the Policies

---

to support the standing approach, *see Blum*, 457 U.S. 991 (1982); *Lewis v. Casey*, 518 U.S. 343 (1996); *Gratz*, 539 U.S. 244 (2003).

calculate ACV. Although each of the Purchasing Fees may accrue differently, *e.g.*, through the acquisition of a vehicle or upon the expiration of a vehicle's registration, the complained injury stems from GEICO's failed remittance, not the costs as assessed by the State. Plaintiffs' injuries in Counts I through V are thus best defined as the failure to be fully compensated for their respective Purchasing Fees on account of breaches of the Policies. This is essentially the same injury that the putative class is alleged to have suffered: an underpayment of their Purchasing Fees due to breaches of the Policies. As with Plaintiffs' injuries, the class's injuries also depend on an interpretation of the Policies as they apply to Purchasing Fees and GEICO's failure to remit those fees. We are also convinced that due to the similarity between the injuries, Plaintiffs' interests are sufficiently aligned with those of the class. Plaintiffs thus satisfy the standing approach as well.[4]

The remaining elements of standing are not in dispute, *i.e.*, causation and redressability. If Plaintiffs were indeed harmed, no one contests that this harm must have been caused by GEICO's underpayment of ACV. And such an underpayment may be remedied through money damages. Accordingly, Plaintiffs have demonstrated their standing under either the class certification or standing approach.

## III.

Because Plaintiffs have class standing, we turn to the remaining issues concerning class certification. We review an order certifying a class for an

---

[4] In disputing Plaintiffs' standing, GEICO also argues that the alleged harms and the calculation of damages originating from its liability would be claim-specific. This argument is meritless largely for the reasons given above. The alleged harm suffered by Plaintiffs and the class is fundamentally the same—damages resulting from a breach of the Policies. Whether the calculation of damages is too claim-specific is a matter better suited for class certification, which we address below. *See infra* Part III.C.

abuse of discretion. *Cleven v. Mid-Am. Apartment Cmtys., Inc.*, 20 F.4th 171, 176 (5th Cir. 2021). "An abuse of discretion occurs only when all reasonable persons would reject the view of the district court." *Id.* (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012)). "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Id.* (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 836 (5th Cir. 2012)). "A district court also abuses its discretion if its decision is based on 'an erroneous understanding of governing law.'" *Id.* (quoting *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012)). "'A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class,' but '[t]he decision to certify is within the broad discretion of the court' as long as 'that discretion [is] exercised within the framework of rule 23.'" *Cleven*, 20 F.4th at 176 (alterations in original) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).

> Rule 23 prescribes four prerequisites for certification of a class action:
>
> (1)  the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)  the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Here, the district court certified the class under Federal Rule of Civil Procedure 23(b)(3). A class action certified under this rule may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## A.

As an alternative to its standing argument, GEICO contends that the class does not otherwise fulfill Rule 23(a)(3)'s typicality requirement. Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James v. City of Dall.*, 254 F.3d 551, 571 (5th Cir. 2001)). "[A] complete identity of claims" is not required; "[r]ather, the critical inquiry is whether the [named plaintiff's] claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quoting *James*, 254 F.3d at 571).

GEICO's contentions regarding typicality are nearly identical to those that it raises regarding standing above. Specifically, GEICO asserts that because no Plaintiff alleges that he or she was deprived payment for all of the Purchasing Fees, his or her claims are not typical of those of the class. Again, GEICO argues that there are three separate injuries, and thus three separate claims, for the failure to receive payment for each of the types of Purchasing Fees. And, adopting this multi-claim framework, GEICO avers that each claim is attributable to a distinct course of conduct. Our conclusion, however, is the same as in our standing analysis, even when assessing the nature of Plaintiffs' claims in greater detail. The course of conduct here is virtually the same across the alleged deprivations of each Purchasing Fee, *i.e.*, whether GEICO breached the Policies. GEICO asserts that different legal questions will be implicated for each of the Purchasing Fees at issue in the Policies but, as with its standing arguments, provides no concrete examples for why this

might be. Such speculation is an insufficient basis for us to rule that the district court abused its discretion. We accordingly affirm the district court's ruling as to typicality.

**B.**

GEICO next challenges Plaintiffs' adequacy as class representatives. A court considers three factors when adjudging the adequacy of named plaintiffs:

> (1) "the zeal and competence of the representative[s'] counsel"; (2) "the [willingness] and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) the risk of "conflicts of interest between the named plaintiffs and the class they seek to represent."

*Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). "When the class representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class." *Id.* But not all conflicts of interest will defeat adequacy. *Id.* Consequently, if a class representative chooses to forego certain claims, a court must assess:

> (1) the risk that unnamed class members will forfeit their right to pursue the waived claim in future litigation, (2) the value of the waived claim, and (3) the strategic value of the waiver, which can include the value of proceeding as a class (if the waiver is key to certification).

*Id.* at 413. The first of the *Slade* factors invokes the doctrine of claim preclusion, which "bars the litigation of claims that have been or should have been raised in an earlier suit." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016). The test for claim preclusion has four elements:

No. 22-20093

> (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). We utilize a transactional test in determining whether the same claim is implicated in two suits. The transactional test asks "whether the facts in the two suits are 'related in time, space, origin, or motivation, whether they form a convenient trial unit,' in short, whether they are based on the 'same nucleus of operative facts.'" *Snow Ingredients*, 833 F.3d at 521 (citation omitted) (first quoting *Test Masters*, 428 F.3d at 571; and then quoting *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000)).

Here, GEICO argues that Plaintiffs' suit risks waiving potentially valuable claims related to how GEICO initially valued a class member's vehicle before accounting for Purchasing Fees, *i.e.*, the Adjusted Vehicle Value ("AVV"). According to GEICO, some class members may want to contest GEICO's original assessment of their vehicles' AVV; however, claims related to AVV underpayment are absent from this litigation. GEICO contends that if AVV underpayment claims are not brought in this suit, then class members will be precluded from bringing them in a future action. GEICO also avers that including claims for AVV underpayment would jeopardize Plaintiffs' chances of achieving class certification, and therefore, Plaintiffs strategically omitted these claims from the present action despite their viability. Consequently, GEICO argues that an irreconcilable conflict of interest exists between Plaintiffs and the class, making Plaintiffs inadequate class representatives.

Turning to the *Slade* factors, GEICO begins by contending that the risk of claim preclusion is high because the calculation of a class member's

vehicle's sales tax—a component of Purchasing Fees—necessarily relies on the class member's AVV. As to the value of the AVV claims, GEICO asserts that the potential AVV claims are more valuable than the present ACV claims. According to GEICO, approximately 95% of the class would be entitled to roughly $100 each if Plaintiffs' ACV claims are successful. Meanwhile, GEICO contends that cases claiming AVV miscalculations allege multiples more in damages on a per-plaintiff basis. Accordingly, GEICO suggests that the strategic value of waiving the claims (to achieve certification of this class) does not outweigh the value of the waived AVV claims.

We are unconvinced, however, that such a conflict exists. We are particularly skeptical of the purported value of these potential AVV claims. Plaintiffs assert that the Complaint does not include a theory of AVV underpayment because there is no merit to such a claim. And while GEICO directs us to district court cases where such a theory was employed, it fails to explain how those cases are akin to ours or why such claims would be similarly viable here. It is often possible that by becoming part of a class, a class member will waive potential claims. But it is also true that many of those potential claims never make the leap from hypothetical to asserted claims due to their dubious value. Here, we find GEICO's explanations to be somewhat lacking in trying to overcome this hurdle and thus ascribe limited value to the potential AVV claims.[5]

Any residual concerns we have regarding preclusion are assuaged by the ability of Rule 23(b)(3) class members to opt out. *See Slade*, 856 F.3d at

---

[5] GEICO also asserts that class members will be unable to bring claims in a future action relating to any other fees associated with ACV not covered in the present litigation. We likewise find this argument highly speculative as GEICO provides no suggestions as to what these other fees might be.

414 ("We note that the risk to unnamed class members is smaller than usual here because of the opportunity for opt outs."). GEICO counters that the ability to opt out insufficiently mitigates the risk of uninformed preclusion because no form of notice can provide class members with adequate information to calculate the value of their possible AVV claims. This argument is too speculative. GEICO provides no further explanation why this would be the case, and we see this as a minimal risk due to the questionable value of the AVV claims. We also consider that "courts have inconsistently applied claim preclusion to class actions," meaning waiver is far from a foregone conclusion here. *Id.* at 413–14 (collecting cases). The risk of preclusion is thus far from certain to the extent that the AVV claims are viable.

Lastly, the parties agree that Plaintiffs would likely be unable to certify the class had they included the AVV claims in their suit, due to the highly individualized nature of those claims. Therefore, given the speculative value of the AVV claims, the impediment they pose to class certification, and the uncertainty surrounding this suit's preclusive effect, we conclude that the strategic value of these claims' waiver is considerably greater than their inherent worth. It was accordingly within the district court's discretion to rule that Plaintiffs are adequate class representatives.[6]

## C.

In opposing class certification, GEICO also contests the class's ability to meet Rule 23(b)(3)'s predominance requirement.

---

[6] While many of GEICO's arguments have been rejected for being too speculative or underdeveloped, the district court may of course decertify the class if evidence supporting GEICO's arguments is unearthed at a later date. *See Slade*, 856 F.3d at 414; FED. R. CIV. P. 23(c)(1).

No. 22-20093

"Determining whether legal issues common to the class predominate over individual issues requires that the court inquire how the case will be tried." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003). "This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Id.*

> An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original) (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50 (5th ed. 2012)). "Even where plaintiffs seeking class certification show that common issues predominate on questions of liability, they must also present a damages model 'establishing that damages are capable of measurement on a classwide basis.'" *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 258 (5th Cir. 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). Some degree of individual calculation, however, is not fatal to satisfying predominance. *See In re Deepwater Horizon*, 739 F.3d 790, 815–16 (5th Cir. 2014) ("[N]othing in *Comcast* mandates a formula for classwide measurement of damages in all cases."); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) (reasoning that "[a]lthough calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue" in holding that predominance was satisfied).

Like its earlier argument regarding adequacy, *see supra* Part III.B, GEICO contends that the AVV of each class member will be at issue in

determining whether GEICO is liable for an underpayment of ACV. GEICO asserts that re-calculating AVV would be a highly intensive and individualized process that would not be predominated by the other legal issues common to the class. We find this argument unpersuasive for similar reasons that we did above. Plaintiffs represent that they do not intend to challenge GEICO's prior AVV determinations. Furthermore, GEICO has not convincingly shown how AVV calculations could become a relevant issue in this case without them being raised by Plaintiffs.[7] There is thus little indication that individualized AVV calculations will become an issue in this litigation based on this action's current construction.

GEICO also disputes that Plaintiffs' damages are necessarily capable of classwide measurement. *See Cruson*, 954 F.3d at 258. But the need for individual calculation here is relatively minor when compared to the common issues that predominate. *See In re Deepwater Horizon*, 739 F.3d 790, 815–16 (5th Cir. 2014); *Bertulli*, 242 F.3d at 298. And Plaintiffs articulate a reasonably ascertainable formula. Sales tax is equivalent to 6.25% of AVV, *see* Tex. Tax Code Ann. § 152.021, and Plaintiffs contend that it can be calculated for almost 97% of the class without resort to individualized review.

---

[7] For the first time on appeal, GEICO argues that AVV calculations will be relevant to its defense, based on a theory of ACV *over*payment due to overvaluing some class members' AVV. Specifically, GEICO asserts that even if it is liable for payment of all Purchasing Fees, some class members whose AVV was overvalued may have already received ACV payments that meet or exceed an adjusted ACV accounting for GEICO's Purchasing Fees liability and a correctly reduced AVV calculation. This argument is forfeited because GEICO failed to raise it in the district court. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal."). GEICO contends that its new overpayment theory inhered in its predominance arguments below regarding the individualized nature of Plaintiffs' claims. We disagree. GEICO's argument below did not fairly notice either Plaintiffs or the district court to this overpayment theory.

Additionally, Plaintiffs' expert included a table in his expert report that may be used to calculate class members' title and registration fees. Therefore, the district court did not abuse its discretion in holding that the class satisfies Rule 23(b)(3) predominance.

## D.

Lastly, GEICO challenges the district court's certification of Plaintiffs' TPPCA claim.

Under the TPPCA,

> if an insurer, after receiving all items, statements, and forms reasonably requested and required . . . delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

TEX. INS. CODE ANN. § 542.058. To prevail on a TPPCA claim, a plaintiff must establish: "(1) the amount for which [the insurer] is contractually liable under the insurance policy; (2) that [the insurer] failed to comply with statutory deadlines; and (3) statutory damages based on the amount contractually owed less the amounts paid within the statutory deadline." *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658–59 (Tex. 2021). "Nothing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the terms of the policy but delayed payment beyond the applicable statutory deadline." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 819 (Tex. 2019).

Here, the district court determined that if the underlying claims for breach of the Policies merited certification, so too did Plaintiffs' TPPCA claim because the TPPCA is a strict liability statute. GEICO does not seriously contest that, if failure to remit the Purchasing Fees is a breach of

the Policies, it likely failed to comply with the 60-day statutory deadline for most of the class. GEICO counters that it still may have complied with the Texas Insurance Code if it made a reasonable payment within a reasonable time. For a payment to be reasonable, it "must 'roughly correspond' to the amount ultimately owed." *Randel v. Travelers Lloyds of Tex. Ins. Co.*, 9 F.4th 264, 269 (5th Cir. 2021) (quoting *Hinojos*, 619 S.W.3d at 658). GEICO has already paid each class member roughly the same proportion of his or her total ACV. If the class were to succeed on its claim for breach of the Policies, each class member would be owed roughly the same proportion of Purchasing Fees relative to the AVV GEICO has already paid. Therefore, a judgment as to whether GEICO complied with the TPPCA should not vary across class members, and thus whether GEICO's payments were reasonable does not preclude class certification.[8]

GEICO also contends that the district court's analysis regarding certification of the TPPCA claim did not meet the rigor that is required. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). "[T]o satisfy the rigor requirement, a district court must detail with specificity its reasons for certifying." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020). "It must explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses, articulating why the issues are fit for classwide resolution." *Id.* "The court should respond to the

---

[8] GEICO also argues that whether each class member complied with the TPPCA, *i.e.*, provided the necessary documentation as requested by GEICO to process his or her insurance claim, will be a highly individualized process and it will thus be difficult to determine GEICO's liability across the class. GEICO's concern here is purely speculative. Indeed, it is hard to fathom how an insured would be able to join the class without already submitting her claim and having it successfully processed by GEICO. We doubt that GEICO would process an insured's claim if the insured failed to submit the required documentation.

defendants' legitimate protests of individualized issues that could preclude class treatment." *Id.*

Here, the entirety of the district court's analysis regarding the TPPCA reads:

> This Court agrees with plaintiffs that the Texas Prompt Payment of Claims Act (TTPCA [*sic*]) is a strict liability statute. Indeed, the Texas Supreme Court recently held "Nothing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the terms of the policy but delayed payment beyond the applicable statutory deadline." *Barbara Techs.*, 589 S.W.3d 806, 819 (Tex. 2019). As such, there is no reason to distinguish between certification of the underlying breach of contract claim and the TTPCA [*sic*] claim.

Relying on the reasoning we affirmed above, the court explained that a more thorough analysis regarding the TPPCA was unnecessary because it is a strict liability statute. We agree. GEICO's arguments against class certification for this claim largely track its arguments opposing certification of Plaintiffs' other claims—mainly, that either ACV or AVV require too individualized of an assessment across the class. The district court addressed this in its analysis concerning the claims for breach of the Policies. Repeating this analysis again for the TPPCA claim would be a redundant exercise. The court's analysis here meets the requisite rigor when read in the broader context of its decision. Accordingly, the district court did not abuse its discretion in certifying the class as to the TPPCA claim.

## IV.

For the foregoing reasons, we AFFIRM.