# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 9, 2009

Charles R. Fulbruge III
Clerk

No. 09-10127

JOHN MIMS, individually and on behalf of all others similarly situated;
LUCY MIMS, individually and on behalf of all others similarly situated; and
HELEN COTTON RAGLAND, individually and on behalf of all others
similarly situated

Plaintiffs-Appellees

v.

STEWART TITLE GUARANTY COMPANY

Defendant-Appellant

Appeal from the United States District Court for the Northern District of
Texas, Dallas Division

Before KING, DAVIS and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant Stewart Title Guaranty ("Stewart") appeals the district court's order certifying a class in this case alleging violations of the Real Estate Settlement Procedure Act ("RESPA") and related state law claims. Based on our conclusion that individual factual issues predominate the RESPA claim, we reverse the district court's order certifying a class on that claim. Although we see no legal impediment to the certification of a class on the state law claims, given our reversal of the federal class certification, we remand to allow the

district court to consider whether to exercise its discretion to retain pendent jurisdiction over those claims.

## I.

Stewart is a title insurance underwriter that uses a network of agents to sell and issue title insurance policies. Plaintiffs allege that they are among numerous consumers who refinanced their home mortgages and failed to receive a mandatory discount on their premiums for new title insurance policies acquired from Stewart. Residential lenders in Texas generally require borrowers to purchase title insurance to protect the lender against defects in title to the property as well as the lender's first lien position. When a borrower refinances an existing mortgage, the new lender requires a new title policy for its benefit. Texas Department of Insurance's Rate Rule R-8 entitles the borrower to a discount on a policy issued after refinancing if the policy is issued within seven years of the closing of the prior mortgage. The discount starts at 40% on renewals occurring within 2 years of the time a prior policy was issued and decreases by 5% for each additional year after the prior policy up to seven years. In order to qualify for the discount, Rule R-8 requires that the pre-existing mortgage (a) be fully taken up, renewed, extended or satisfied, and (b) have been previously insured (with lender's title insurance). See BASIC MANUAL OF RULES, RATES AND FORMS FOR THE WRITING OF TITLE INSURANCE IN THE STATE OF TEXAS § III RATE RULE R-8.

The plaintiffs allege that they refinanced their loans within the discount period and did not receive the R-8 reissue credit to which they claim they were entitled. They further allege, with sampling data to support that allegation, that Stewart, through its agents, consistently failed to provide the reissue insurance discount and that Stewart and the agents split the illegal, unearned charges on the policies.

On these facts, the plaintiffs allege, in addition to various state law claims, a violation of § 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), which provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally-related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(c).

Stewart filed a motion to dismiss arguing that the plaintiffs failed to state a violation of RESPA as a matter of law. The district court denied the motion. *Mims v. Stewart Title Guar. Co.*, 521 F.Supp.2d 568 (N.D. Tex. 2007). Plaintiffs then moved for class certification. The district court granted the motion for class certification for both the federal and state law claims, with modifications narrowing the proposed class. *Mims v. Stewart Title Guar. Co.*, 524 F.R.D. 482 (N.D. Tex. 2008). Stewart then filed a Petition for Permission to Appeal under Federal Rule of Civil Procedure 23(f). This court granted the petition.

## II.

Stewart argues first that the district court erred in certifying the plaintiffs' proposed RESPA class when the named plaintiffs lack standing to assert a claim. Although Stewart references Article III standing and cites the appropriate factors from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), the substance of its argument is that the plaintiffs fail to state a claim under RESPA on the merits. If the defendants were actually challenging the plaintiffs' Article III standing, this court could clearly address that issue before deciding the propriety of class certification.[1] There is no serious question that the plaintiffs

---

[1] See *Bertulli v. Independent Assoc. of Continental Pilots*, 242 F.3d 290, 294 n.11 (5th Cir. 2001) ("[S]tanding is an inherent prerequisite to the class certification inquiry . . despite the limited nature of a Rule 23(f) appeal." *Bertulli* applied Article III standing analysis to the

3

have standing to bring this claim. They have alleged an injury-in-fact (overpayment of premiums for title insurance issued upon refinancing their mortgage), causation (the defendants overbilled for the premiums) and redressability (if plaintiffs are successful, they will be refunded the overpayment).

Stewart's argument asks this court to address, not Article III standing however, but whether the plaintiffs' allegations state a claim under RESPA. We may not reach that issue because our review of an appeal under Rule 23(f) is limited and does not permit a general inquiry into the merits of the plaintiffs' claim. This court addressed the scope of its jurisdiction in a Rule 23(f) appeal in *Regents of the University of California v.Credit Suisse First Boston*.

> Rule 23(f) states that "[a] court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order." FED. R. CIV. P. 23(f). The text of the rule makes plain that the sole order that may be appealed is the class certification; "no other issues may be raised." *Bell*, 422 F.3d at 314. The fact that an issue is relevant to both class certification and the merits, however, does not preclude review of that issue.
>
> . . .
>
> Although we may not conduct an independent inquiry into the legal or factual merit of this case as though we were reviewing a motion under Federal Rule of Civil Procedure 12(b)(6) or 56, we may address arguments that implicate the merits of plaintiffs' cause of action insofar as those arguments also implicate the merits of the class certification decision.

*Regents of the Univ. of Cal. v. Credit Suisse First Boston*, 482 F.3d 372, 380 (5th Cir. 2007). In *Regents*, the plaintiffs filed suit against several banks alleging that the banks entered into partnerships and transactions with Enron Corporation that allowed Enron to misstate their financial statements. The

---

plaintiffs' claims.)

district court certified a class of persons who purchased Enron securities during the certain time period during which these transactions were reported. The class certification decision rested on the district court's conclusion (1) that a deceptive act under rule 10b-5(c) includes participating in a transaction whose principal purpose and effect is to create the false appearance of revenues, (2) that rule 10b-5(a)'s prohibition against schemes to defraud gives rise to joint and several liability for defendants who commit individual acts of deception in furtherance of the scheme and (3) that plaintiffs were entitled to rely on the classwide presumption of reliance for omissions and fraud on the market. *Id*. at 378. This court reversed the order certifying the class because it found that the district court erred by including in its definition of "deceptive act" not only failure to satisfy a duty to disclose material information to the plaintiff, but also failure to satisfy that duty by means of a scheme or act. *Id*. at 384. An act cannot be deceptive under § 10(b) where the actor, like the banks, had no duty to disclose. *Id*. at 386. Without a "deceptive act" or straightforward failure to disclose, the plaintiffs were not entitled to the presumption of reliance on an omission under the fraud-on-the-market theory, which was critical to class certification. Without a classwide presumption of reliance, the plaintiffs would be left to prove individual reliance on the defendants' conduct precluding class certification. *Id*. at 383. Therefore class certification was improper and this court reversed. In doing so, this court by necessity considered the defendants' arguments against class certification that also implicated the merits of the plaintiffs' cause of action, but only to the extent the merits affected whether class issues would predominate the litigation.

Stewart relies on *Washington v. CSC Credit Services Inc.*, 199 F.3d 263 (5th Cir. 2000), to support its contention that this court can consider whether the plaintiffs have stated a claim in an appeal of class certification. That reliance is misplaced. In *Washington*, the plaintiffs brought a claim under the Fair

Credit Reporting Act ("FCRA"). The district court certified a class based on its intermediate ruling that the "plaintiff can bring an action [under the FCRA] for failure to 'maintain [the] reasonable procedures' required by § 1681e(a) without first showing that a report was disclosed in violation of § 1681b." *Id*. at 266. This court first addressed this crucial issue before addressing the merits of class certification. *Id.* The inquiry was phrased as a question of "individual standing", but addressed the merits of the plaintiffs' claims, not traditional Article III standing under *Lujan*. *Id*. at 265. However, *Washington* does not support a conclusion that this court may address the merits of all appeals of class certification decisions, because a later decision of this court recognized that *Washington* was in a different procedural posture than this case. *See Bertulli*, 242 F.3d at 294 . *Washington* was appealed under 28 U.S.C. § 1292(b), not Rule 23(f). The court certified for appeal "all issues fairly presented" in the court's order, so this court's appellate review was not limited to issues of class certification. *Id*.

Accordingly, under the standard rule application to appeals under Rule 23(f), the merits of the plaintiffs' claims under § 8(b) of RESPA may only be considered in this case if relevant to the class certification question.

### III.

This court reviews the certification of a class for abuse of discretion. *Stirman v. Exxon Corp*., 280 F.3d 554, 561 (5th Cir. 2002). We review *de novo* whether the district court applied the correct legal standard to grant certification. *Washington,* 199 F.3d at 265-67. Where a district court bases its legal analysis on an erroneous understanding of the governing law, it has abused its discretion. *Regents*, 482 F.3d at 380. Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if "the court finds that questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Stewart argues that the district court failed to undertake a rigorous analysis of the class claims to determine if class issues predominate and the class action is the superior method by which to try plaintiffs' claims.

IV.

Understanding Stewart's argument against class certification requires some background on RESPA. Plaintiffs' federal claims assert a violation of Section 8(b) of RESPA, which states:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally-related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). This provision was designed to prohibit kickback and referral fee arrangements that had increased closing costs to real estate buyers. It prohibits a person who performs a settlement service from giving or rebating any portion of the charge to any other person who did not perform a settlement service. *Haug v. Bank of Am, N.A.*, 317 F.3d 832, 836 (8th Cir. 2003); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 880 (7th Cir. 2002). Section 8(c) of RESPA contains several exceptions to the general rule and specifically allows the payment of a fee "by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance." 12 U.S.C. § 2607(c)(1)(B).

The "real estate settlement service" at issue in this case is the provision of title insurance. The charge (the title insurance premium) is split between Stewart and its agents who actually sell the title insurance or reissue insurance. The question in this case narrows to whether Stewart charges a fee and shares

that fee with its agents "other than for services actually performed." There is no question that both Stewart and its agents perform services in return for the title insurance premium. The plaintiffs argue that because Texas law sets the premium rate that Stewart must charge and the discount on that premium Stewart must allow on reissue policies, only the discounted portion of the premium is for "services actually performed." They argue that the discount that was improperly withheld is a charge for which no services are performed, and therefore a violation of § 8(b) of RESPA.

The plaintiffs' argument thus rests on the theory that the title insurance premium can be split between the amount allowed under Rule R-8 after the appropriate discount is applied and the amount in excess of that amount; they argue that this excess amount represents a charge for which no services were actually performed. In its ruling on Stewart's motion to dismiss, the district court accepted plaintiffs' argument that fees charged by a title agent that exceeded the value of the agent's services were in the nature of kickbacks and gave rise to a claim under § 8(b):

> Although Plaintiff's allegations are vague, they can be fairly read to support the following argument: Stewart charged excessive premiums. Stewart gave, and title agents accepted, a portion of the excessive premiums. The portion accepted by the title agents was excessive and not "for services actually performed," but instead were in the nature of kickbacks or referral fees.

*Mims*, 521 F.R.D. 2d 568, 571-72 (N.D. Tex. 2007), citing *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir. 2002), and *Patino v. Lawyers Title Ins. Corp.*, No. 3:06-CV-1479-B, slip op. at 6 (N.D. Tex. Jan. 11 2007). However, the district court did not find an automatic violation of § 8(b) related to the excess charge. Rather it found that "Stewart's split with the title agents may not have been for services actually performed, and hence in violation of section 8(b),

if the title agent's compensation was not reasonable in relation to the services they performed." *Mims*, 521 F.R.D. 2d at 573.

Plaintiffs' theory (which was accepted by the district court) that fees can be split between fees reasonable in relation to the services performed and those that are not comes from a HUD interpretation of RESPA.

> A single service provider . . . may be liable under Section 8(b) when it charges a fee that exceeds the reasonable value of goods, facilities, or services provided. HUD's regulations as noted state: "If the payment of a thing of value bears no relationship to the goods or services provided, then the excess is not for services or goods actually performed or provided."

*Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 55-56 n.4 (2d Cir. 2004), citing Policy Statement, 66 Fed. Reg. at 53,059 (quoting 24 C.F.R. § 3500.14(g)(2)). This court has deferred to HUD's interpretation as reflected in 24 C.F.R. § 3500.14(g)(2), "as a broad agency rule, insofar as it provides a mechanism for detecting kickbacks where the 8(c) exception is invoked." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 740 (5th Cir. 2003).[2]

---

[2] The Second Circuit has rejected this agency rule in the context of facts similar to this case (and distinguishable from those in *O'Sullivan*) based on its conclusion that section 8(b) did not impose price controls and does not prohibit "overcharges." *Kruse*, 383 F.3d at 55-56. The Third Circuit declined to reach the question whether it should defer to the agency interpretation because it found that Section 8 does not provide a cause of action for overcharges. *Santiago*, 417 F.3d at 387. The Fourth Circuit has decided a case indistinguishable from this one and held that because the title insurer and its agents performed services in return for the charges they collected, there was no violation of RESPA § 8(b) because it is not a price control statute. *Arthur v. Ticor Title Insurance Co. of Florida*, 569 F.3d 154 (4th Cir. 2009). *Arthur* also rejected the idea that the charges can be broken into multiple pieces (the portion valid under state insurance law and the excess) based on HUD regulations and policy statements. Citing cases from multiple circuits, *Arthur* states that "Section 8(b) does not prohibit charging 'too much' for services actually performed; instead they have held that an allegation that services were not performed is necessary for liability to attach under Section 8(b)." *Id.* at 159-160. Because of the limited nature of our review of the district court's class certification decision, we need not resolve the merits of whether this regulation is entitled to deference on the facts of this case which does not involve an allegation of a kickback.

Given our limited jurisdiction in this Rule 23(f) appeal, we have no authority to review the district court's conclusion that the plaintiffs have stated a claim for these alleged overcharges under this theory. But accepting for purposes of this appeal the district court's theory of liability under RESPA § 8(b) set forth in its ruling on the motion to dismiss, that liability theory leads us to conclude that its class certification decision is an abuse of discretion, because the district court's liability model for violations of RESPA § 8(b) requires an inquiry into the facts of each individual class member's title insurance transaction. In its denial of Stewart's motion to dismiss, the district court accepted the plaintiffs' argument that the fee for reissue title insurance can be divided two portions: that portion authorized by the rate rule which is for services actually performed and the excess charge. The district court did not find that the excess charge standing alone represented a violation of § 8(b). Rather it found that "Stewart's split with the title agents may not have been for services actually performed, and hence in violation of section 8(b), if the title agent's compensation was not reasonable in relation to the services they performed." In other words, the district court concluded in the motion to dismiss that to establish a RESPA violation, the plaintiff in each individual case must establish that the agent from whom he purchased the policy charged an unreasonable fee. However, in its class certification order, the district court rested its decision on plaintiffs' allegations that as a matter of fact, neither the title agent nor Stewart provided services in any of the transactions to justify the excess charge and that this contention was capable of being tested on a class-wide basis without individualized inquiries into the circumstances of each transaction. No explanation was provided to connect the two rulings.

The *O'Sullivan* case previously cited bars this outcome. In *O'Sullivan v. Countrywide Home Loans, Inc.*, the district court considered whether class certification was proper under a similar fact pattern in which the plaintiffs were

charged a document preparation fee in real estate closings. 319 F.3d 732 (5th Cir. 2003). The *O'Sullivan* plaintiffs alleged that they paid mortgage preparation fees to law firms selected by Countrywide, their mortgage broker. They also alleged that Countrywide accepted kickbacks from the law firms in violation of RESPA sections 8(a) and (b). *Id.* at 737. Countrywide contended that its employees provide some services in the preparation of the mortgage transactions by entering data about each transaction into a software program. *Id.* at 736-737. The program produces an initial set of closing documents that are then reviewed by the attorneys. Therefore, it argued that in individual cases a reasonable relationship existed between the value of the alleged services provided and the payments it received. *Id.* The district court rejected this approach and found that the plaintiffs could show that "the practice itself" bears no reasonable relationship to the value of Countrywide's services in toto. *Id.* at 737. This court decertified the class on its conclusion that individual analysis was required stating:

> The only way the overall practice may be proven to violate RESPA, consistently with the HUD liability standard, is to examine the reasonableness of payments for good and services. This inquiry must be performed on a transaction-by-transaction basis, because a single finding of liability on an unreasonable relationship between goods and services does not necessitate the conclusion that such unreasonableness exists on a classwide basis.

319 F.3d at 742.

In other words if we accept the district court's theory of liability, the HUD liability standard requires an inquiry into the reasonableness of the payments for goods and services. Under *O'Sullivan*, that inquiry must be performed on a transaction-by-transaction basis. Since this case seeks to certify a class with RESPA liability based on the HUD liability standard, it is clear that class issues do not predominate and class certification on the RESPA claim was improper.

V.

We must also address class certification for the plaintiffs' state law claims. The plaintiffs raise three state law claims – for money had and received, unjust enrichment, and implied contract. All rely on their assertion of the right to a reissue discount. Stewart argues that in defining the class the district court improperly relied on classwide inferences ignoring individualized issues relating to the eligibility for the discount that is the basis for all of plaintiffs' claims.

First, Stewart takes issue with the district court's class definition. When the plaintiffs moved for class certification, they proposed a class of

> All persons who, within seven years of the date of an existing mortgage on their residential real property in Texas, refinanced or otherwise replaced their existing mortgage and were charged a premium for a new lender title insurance policy underwritten by Defendant Stewart Title Guaranty Company, and did not receive a refinance credit.

*Mims*, 254 F.R.D. at 486. The proposed class was also limited to borrowers obtaining policies within four years prior to the filing of the lawsuit. The district court found this definition too broad because it would include individuals who were not eligible for the R-8 credit. The district court narrowed the class by following Stewart's Underwriting Guidelines which allow its agents to assume that a refinanced mortgage was insured by a prior title policy, and therefore eligible for the R-8 credit, "if (1) it has a GF number, (2) it is returned to a title company, or (3) it is a first-lien in favor of an institutional lender." *Id.* at 484. A GF number indicates that a title agent has opened a file to potentially conduct a real estate transaction and that a title search may have been performed on a given piece of property.

Stewart argues that this definition violates its right to due process and Rule 23 because, as the district court acknowledged, the legal requirements for

eligibility for the R-8 credit are not identical to Stewart's Underwriting Guidelines and therefore the class as defined may include plaintiffs who are not in fact eligible for the discount. Because this class definition is based on Stewart's own criteria for allowing the R-8 discount, we find no abuse of discretion in defining the class this way. We agree with the district court that establishing prerequisites for class membership is sufficient evidence from which the jury could infer entitlement to the R-8 credit, which Stewart is free to rebut. Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct. *Kohen v. Pacific Investment Management Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009). In *Kohen,* the Seventh Circuit affirmed class certification in a case alleging that defendants cornered the market in a particular futures contract. The class included all persons who bought a futures contract on the Chicago Board of Trade in 10-year U.S. Treasury notes during a particular time period. *Id*. at 674 The court acknowledged that based on the individual characteristics of their trades during the time period, some purchasers may not have been harmed by the alleged manipulation, but concluded that the class as defined was sufficiently narrow as to exclude the likelihood that many plaintiffs were improperly included. *Id*. at 678. The district court was not required to determine that every class member had suffered damages as a prerequisite to class certification. *Id*. at 676.

Stewart also argues that because of the equitable nature of the plaintiffs' state law claims an individualized factual inquiry is required into the circumstances of each transaction making class certification on these issues an abuse of discretion. We disagree. Granting the R-8 to eligible borrower is mandatory. Under Texas law, disclosure of the discount and waiver are irrelevant because the rate rule sets the maximum amount, net of the applicable discount, that Stewart and other title insurers may charge for reissue title

insurance. Accordingly, the district court did not abuse its discretion by certifying the class as to the state law claims.

Notwithstanding our affirmance of the certification of the state class, given our reversal of the federal class certification, the district court should on remand consider whether to continue to exercise its discretionary supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [allowing supplemental jurisdiction] if – . . . (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."). There is obviously a strong argument that the class action on the state law claims will predominate over the individual federal claims.

VI.

For the foregoing reasons, we reverse the district court's order certifying a class on the RESPA claim and remand this case to the district court to consider whether, in light of this opinion, it should exercise pendent jurisdiction over the state law claims.

REVERSED and REMANDED.